(128 App. Div. 664.)

## LINDNER v. STARIN et al.

(Supreme Court, Appellate Division, Third Department. November 11, 1908.)

1. ACTION (§ 25*)—NATURE OF ACTION—ACTION AT LAW—RECOVERY FOR SERVICES.

An action for services, under an agreement to pay therefor a certain per cent. of the net profits of the employer's business, is an action at law, though an accounting may be necessary to determine the amount of profits.

[Ed. Note.—For other cases, see Action, Cent. Dig. § 137; Dec. Dig. § 25.*]

2. REFERENCE (§ 8*)—GROUND FOR REFERENCE—LONG ACCOUNT.

Whether the action be at law or in equity, Code Civ. Proc. § 1013, authorizes a compulsory reference only where examination of a long account is required.

[Ed. Note.—For other cases, see Reference, Cent. Dig. §§ 13–23; Dec. Dig. § 8.*]

3. REFERENCE (§ 8*)—CASE INVOLVING ACCOUNT.

An action to recover for services, under a contract to pay therefor a certain per cent. of the net profits of the employer's manufacturing business, does not involve an account within Code Civ. Proc. § 1013, authorizing a reference where examination of a long account is required; the chief items of difference being whether the employer is entitled to credit for interest on its liabilities existing when the contract was made, and whether plaintiff's share of profits is subject to claims against the employer for failure to deliver goods as agreed, caused, as contended by plaintiff, by defendants' failure to run their mill to its full capacity, or, as contended by defendants, by plaintiff taking orders beyond the capacity of the mill.

[Ed. Note.—For other cases, see Reference, Cent. Dig. §§ 13–23; Dec. Dig. § 8.*]

4. REFERENCE (§ 7*)—TO DETERMINE QUESTION OF FACT.

Code Civ. Proc. § 1015, authorizing a reference to determine and report on a question of fact arising in any stage of the action on a motion or otherwise, except on the pleadings, applies only in equity actions, and in respect to matters collateral to the main issue and not arising on the pleadings.

[Ed. Note.—For other cases, see Reference, Cent. Dig. § 10; Dec. Dig. § 7.*]

Appeal from Special Term, Fulton County.

Action by Arthur E. Lindner against John H. Starin and another. From an interlocutory judgment, appointing a referee to state the account between the parties and determine the amount due plaintiff, entered on a decision after a trial without a jury (60 Misc. Rep. 431, 113 N. Y. Supp. 652), defendants appeal. Reversed and remitted for determination of all questions.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

M. L. Stover and George M. Albot, for appellants.
Henry V. Borst and J. S. Sitterley, for respondent.

COCHRANE, J. The complaint alleges: That the defendants, as copartners, were engaged in the business of manufacturing and selling silk fabrics and products; that prior to September 5, 1905, the plain-

tiff, skilled as a machinist and silk weaver superintendent, and skilled in the manufacture and sale of silk fabrics and products, had been in the employ of the defendants at their silk mill and plant in the manufacture of silk and the management of said plant; that on or about the last-mentioned day, the plaintiff then being in the employ of the defendants, the latter employed him as superintendent and foreman of their business and to purchase portions of the raw material, and sell the manufactured products, and promised to pay him a salary of $40 per week, and also to pay and allow him one-third of the net profits of said business; that it was agreed that such employment should date from the 1st day of September, 1905, and continue until the 31st day of August, 1906; that pursuant to such agreement plaintiff entered upon his said employment, and conducted defendants' business under said agreement until August 1, 1906, when, without his consent, defendants sold their mill and plant and closed their business; that there has been paid to the plaintiff his said salary of $40 per week, but no part of the profits of said business has been paid to him; that during the time of his employment from September 1, 1905, until August 1, 1906, he manufactured and sold for the defendants products worth about $230,000, and the net profits therefrom amounted to upwards of $60,000, of which one-third part thereof is due and owing to him; and the complaint demands judgment for $20,000, with interest from August 1, 1906, besides costs.

The defendants having answered, the action was tried before the court without a jury; a jury trial having been expressly waived. The terms of the contract, as alleged by the plaintiff, were not controverted at the trial; but the litigation reduced itself substantially to the question as to how much, if anything, was due plaintiff under his contract. The parties introduced all their evidence, concluded the trial, and submitted the case to the trial justice for determination. In his decision he found the facts as claimed by plaintiff, except as to the amount of the recovery, which facts were substantially uncontroverted, and also found that a statement and account of the business of the defendants during the period between September 1, 1905, and August 1, 1906, was necessary in order to determine the profits to which plaintiff was entitled, and directed that an interlocutory judgment be entered appointing a referee to take and state such account and determine the amount of such profits, and that on filing the report of such referee final judgment might be entered thereon. From this interlocutory judgment, defendants appeal.

There is no suggestion in the complaint that an accounting is needed or desired. From its allegations and from its demand for judgment, a specific and definite sum appears to be due plaintiff. He expressly alleges a contract of employment for a definite term. He characterizes his relationship with the defendants as that of an "employment" and negatives the idea of a joint venture or enterprise.

The trial justice correctly held this to be an action at law. It is an action to recover compensation for services measured by a certain proportion of the net profits of the employer's business, and that such an action is legal and not equitable in its nature, even though an accounting may be necessary to determine the amount of profits, is well

settled. Smith v. Bodine, 74 N. Y. 30; Gee v. Pendas, 66 App. Div. 566, 73 N. Y. Supp. 247; Gillespie v. Montgomery, 93 App. Div. 403, 87 N. Y. Supp. 701; McCullough v. Pence, 85 Hun, 271, 32 N. Y. Supp. 986; Lee v. Washburn, 80 App. Div. 410, 80 N. Y. Supp. 1040; Black v. Vanderbilt, 70 App. Div. 16, 74 N. Y. Supp. 1095; Everett v. De Fontaine, 78 App. Div. 219, 79 N. Y. Supp. 692; Moore v. Coyne, 113 App. Div. 52, 98 N. Y. Supp. 892; Chaurant v. Maillard, 56 App. Div. 11, 67 N. Y. Supp. 345. But whether the action be deemed one at law or in equity, in either case the only power of the court to order a compulsory reference under section 1013 of the Code of Civil Procedure is limited to cases requiring the examination of a long account. Thayer v. McNaughton, 117 N. Y. 113, 22 N. E. 562; Roome v. Smith, 123 App. Div. 416, 107 N. Y. Supp. 1088; Doyle v. Metropolitan Elevated Railway Company, 136 N. Y. 505, 32 N. E. 1008; Standard Fashion Company v. Siegel-Cooper Company, 44 App. Div. 121, 132, 60 N. Y. Supp. 739; Camp v. Ingersoll, 86 N. Y. 433; Cayard v. Texas Crude Oil & Mining Company, 118 App. Div. 299, 103 N. Y. Supp. 437; Jones v. Lester, 77 App. Div. 174, 78 N. Y. Supp. 1000.

In Thayer v. McNaughton, supra, it is said:

"It is not enough to justify a compulsory reference that the case may, by possibility, involve the examination of a long account. There must be enough alleged or shown to justify an inference that that will be the course of the trial. The same rule applies to equitable as to legal actions. In neither case can a compulsory reference be ordered unless the trial will require the examination of a long account. In equity actions the reference may be of the whole issues, or any one of them, or to report upon specific questions of fact; but the power of the court to order the reference is limited by the general condition contained in the first clause of section 1013, which is alike applicable to cases triable by the court and cases triable by jury. Camp v. Ingersoll, 86 N. Y. 433; Barnes v. West, 16 Hun, 68; Read v. Lozin, 31 Hun, 286."

This reference has been ordered on the theory that an account is involved, and the sole functions of the referee under the interlocutory judgment are to take and state the account and determine the amount of profits to which plaintiff is entitled. If the examination of a long account is involved, within the meaning of section 1013 of the Code of Civil Procedure, the court had power to order the reference. This interlocutory judgment is in fact little more than an order of reference, except that it provides that final judgment may be entered directly on the report of the referee, and, if the question is one merely of terminology, and not of substance, it can scarcely call for serious consideration. But the reference must rest on the existence of a long account, and not on the power of the court to order a compulsory reference of any issue involved in the action.

An examination of this case convinces us that a long account is not involved, within the meaning of section 1013 of the Code of Civil Procedure, except, possibly, within very narrow limits, and that a reference is unnecessary, inexpedient, and not subservient of any useful purpose. Plaintiff had complete access to defendants' books, and on the trial produced a statement made by his accountant showing what he claimed to be the net profits of the defendants' business dur-

ing the period in question from September 1, 1905, to August 1, 1906. This statement fixed the net profits at $41,703.32. Defendants also produced a similar statement, showing the net profits as claimed by them to be $34,492.05. There is a remarkable uniformity in the respective items making up these two statements. The difference of $7,-611.27 is mainly accounted for by one item of $6,992 in defendants' statement credited to themselves for interest on liabilities of the firm prior to September 1, 1905, the time of plaintiff's employment. The propriety of that item presents solely a question of law to be determined from the evidence. There still remains a difference of $619.27 between the parties as disclosed by their respective statements, of which amount, if entirely allowed, as claimed by plaintiff, he would be entitled to one-third. Within these narrow limits there can be little difficulty in adjusting the account. It is seldom that a litigation involving such large transactions discloses such simplicity in arriving at a conclusion. Comparing the two statements item by item, which are not numerous, and with the aid of the testimony in the case, very little difficulty should be experienced in arriving at a just and equitable result, and surely no reference is needed for that purpose. The plaintiff, as stated by the trial justice in his opinion, makes no claim for damages for the closing of defendants' business prior to the expiration of his term. Even though a reference might be proper to adjust the small difference between the parties, as above pointed out, it should be postponed until after the determination of the question to which allusion will now be made, because such determination may render the other question unimportant.

It appears that actions have been instituted against the defendants by different parties to recover damages for failure to deliver goods according to agreements. The aggregate amount of the claims so made is $167,219. It is a vitally important question in this case whether plaintiff's portion of the profits is subject to these litigations in whole or in part. This feature of the case seems in a large degree to have influenced the trial justice in directing a reference. He says in his decision:

"The said difference grows in great part out of the claim of the defendants that said profits are subject to claims made in certain litigations pending against them, growing out of the alleged failure to deliver goods from said mill, while the plaintiff contends that such claims arise wholly through the fault of the defendants in curtailing the product of said mill during the year 1905, and the sale of said mill prior to the 1st day of September, 1906."

Those litigations are not occasioned by reason of the fact that defendants sold their mill and went out of business, because in practically every instance the complaints in those actions allege that the goods were to be delivered by defendants prior to that time.

It is the contention of plaintiff that defendants did not operate their mill to its utmost capacity; whereas, defendants, on the other hand, assert that plaintiff took orders and made sales beyond such capacity. Some of the orders were taken on the day following the commencement of plaintiff's employment, and others were taken shortly thereafter. Evidence was introduced bearing on the productive capacity of the mill, and the court made a finding on that point.

In Camp v. Ingersoll, 86 N. Y. 433, an appeal was taken from an order of reference to hear and determine. Chief Judge Folger, speaking for the court, said:

"It is not so easy to say that it will require the examination of a long account, as that phrase is to be interpreted in view of previous decisions. In Van Rensselaer v. Jewett, 6 Hill, 373, 41 Am. Dec. 750, it is said that the case cannot be referred, though there be many items of damage, unless there is an account between the parties in the ordinary acceptation of the term. And what is that acceptation is shown by Thomas v. Reab, 6 Wend. 503, where the contention for the order was based upon the conceded fact that the trial would require the examination of a variety of items. The contention was not sustained, because, though there were sundry items of damage, they did not form an account existing between the parties. Though the examination of numerous items of damage may be involved, they do not constitute an account, technically or properly speaking, between the parties. Silmser v. Redfield, 19 Wend. 21. An account between the parties is one made up of the dealings of the parties with one another (Dederick's Adm'rs v. Richley, 19 Wend. 108), though the account may be that of one party only. And so in Kain v. Delano, 11 Abb. Prac. (N. S.) 29, it is held that the accounts to be examined must be the immediate object of the action, or the ground of defense, and must be directly and not collaterally involved. * * * It is plain that it would be for the convenience of the parties to try this case before a referee, where the various and numerous items which together show what was the value of the assets of the corporation, and thus what was the value of its capital stock, could be inquired into and arrived at with care and deliberation, and consequent accuracy. It is plain that it will be tedious, if not impracticable, to do this with a judge and jury. A reference of this case would be within the spirit of the law permitting a compulsory reference. We have seen but one case of former days holding that it is within its purview. That is Samble v. Mech. Fire Ins. Co., 1 Hall's Super. Ct. 617. It is not in harmony with the cases that we have cited above, and we may not disregard them and follow it. We are constrained, by the force of authority, to hold that there was no power in the Special Term to compel the plaintiff to a reference to hear and determine. We must reverse the orders appealed from."

It seems very clear that the effect of this pending litigation against defendants on plaintiff's claim is not properly the subject of a reference. In no proper sense does it involve an account or computation. The parties have introduced all the evidence at their disposal in connection with that question. The same evidence probably would be produced before the referee. The trial justice, as well as a referee, can determine from such evidence whether the plaintiff is responsible for any part of those claims made against defendants, and whether such claims, if established, affect the amount of his compensation. If they do affect such compensation in whole or in part, it must, of course, necessarily be difficult, pending those litigations, to determine to what extent; but that difficulty does not make the subject-matter thereof referable. Plaintiff did not see fit to postpone his action until such time as the sequence of events would clear up some of the surrounding difficulties and place him in possession of more tangible evidence bearing on the question of net profits, and, if he is embarrassed in establishing his case, such embarrassment should not change the usual and ordinary course of procedure. On the other hand, if plaintiff's claim is not subject to those litigations, he will not be embarrassed thereby. It was the right of the parties, however, to have a determination by the trial justice on the evidence as submitted to him of the questions presented by those litigations so far as they affect this action.

Nor can the reference be justified under the last clause of section 1015 of the Code of Civil Procedure, authorizing a reference "to determine and report upon a question of fact arising in any stage of the action upon a motion or otherwise except upon the pleadings." The power thus authorized can be exercised only in equity actions and in respect to matters which are collateral to the main issue and which do not arise upon the pleadings. Doyle v. Metropolitan Elevated Railway Company, 136 N. Y. 505, 511, 32 N. E. 1008; Camp v. Ingersoll, 86 N. Y. 433, 437; Standard Fashion Company v. Siegel-Cooper Company, 44 App. Div. 121, 132, 60 N. Y. Supp. 739; Roome v. Smith, 123 App. Div. 416, 107 N. Y. Supp. 1088.

All the evidence which either party possessed bearing on the question of damages was received. There was no suggestion at the trial that other evidence was desired or obtainable. The trial justice partly decided the case, and his error consists in sending to a referee for determination certain questions which he should have determined himself from the evidence before him. Under the circumstances, it would seem that a new trial is not necessary, but that entire justice can be done by remitting the cause to the trial justice to make a complete determination thereof. In the event that either party may desire to introduce further evidence, he will have ample power to allow such privilege.

The interlocutory judgment should be reversed, and the cause remitted to the trial justice for determination of all questions, with costs to the appellant to abide the event.

Judgment reversed. All concur.

JOHN M. KELLOGG, J. I concur in reversal. The eighth finding of fact states the real issue of fact between the parties without deciding it. The court cannot send that issue to a referee under the name of an accounting. If the plaintiff is right upon that issue, it is immaterial how many suits are pending against the defendants, or what the results of them may be, and the case at bar may properly turn upon the present record. If, however, these claims represent losses caused by the plaintiff's management of the business, it may be more or less difficult upon the present record to determine what losses have been sustained. A judgment in favor of the various claimants creates no new loss against the business, but might be evidence of what loss actually had taken place before the action was brought. Such judgment, if binding upon the parties hereto, might be more satisfactory evidence than can otherwise be produced.

I think the case should be remitted to the court, the question mentioned in the eighth finding of fact should be decided, and thereupon, unless the court shall grant a motion, which may be made, to suspend the further hearing of the action until the further order of the court, or to permit further testimony to be given, that the case be decided upon the present record.